**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **AARON TAYLOR,** | : | **CIVIL NO. 1:15-CV-1413** |
| | : | |
| **Plaintiff,** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| | : | |
| **HARRISBURG POLICE** | : | |
| **DEPARTMENT, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

| | | |
|---|---|---|
| **JUNE TAYLOR,** | : | **CIVIL NO. 1:15-CV-1414** |
| | : | |
| **Plaintiff,** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| | : | |
| **HARRISBURG POLICE** | : | |
| **DEPARTMENT, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**REPORT AND RECOMMENDATION**

I.    **Statement of Facts and of the Case**

Albert Einstein once said that doing the same thing over and over again and

expecting different results is the highest form of human folly.  These two *pro se, in*

1

*forma pauperis* lawsuits, which were filed on July 21, 2015, call to mind the wisdom of Einstein's observation.

These lawsuits are virtually identical to a prior lawsuit filed by Aaron Taylor on March 18, 2015. <u>Taylor v. Harrisburg Police Department</u>, et al., 1:15-CV-543. Like the instant lawsuits, Taylor's initial complaint was a spare, two-page pleading. In it, Taylor alleged that a Harrisburg Police Officer conducted an illegal search of Mr. Taylor in February of 2015. Moreover, like the current lawsuits, Taylor's initial civil complaint named a police officer and Harrisburg Police Department as defendants, but contained no well-pleaded factual averments regarding the defendants beyond the talismanic assertion that a police officer violated the Fourth Amendment in some undefined way by conducting a search in some unexplained manner.

Upon a screening review of Taylor's initial complaint in <u>Taylor  v. Harrisburg Police Department</u>, et al., 1:15-CV-543, we recommended that the complaint be dismissed as to the institutional defendant. The complaint was then served upon the police officer named therein, Officer Carriere, who moved to dismiss the complaint. In this motion to dismiss the defendant referred us to undisputed court dockets which, on their face, seemed  to wholly undermine Taylor's claims. These dockets reflected that the February 13, 2015, search of Taylor was conducted incident to Taylor's arrest on another warrant, and resulted in the seizure of marijuana from Taylor. These court

records further revealed that the drug charge brought against Taylor as a result of this search incident to his arrest on other charges also remained pending in the Court of Common Pleas for Dauphin County. <u>Taylor v. Harrisburg Police Department</u>, et al., 1:15-CV-543.

Taylor never responded to this motion to dismiss filed in <u>Taylor v. Harrisburg Police Department</u>, et al., 1:15-CV-543. Accordingly, concerned about whether Taylor intended to pursue this lawsuit given his complete inaction, we directed Taylor to respond to the motion stating, "With respect to this outstanding motion, the plaintiff shall file a response to the motions in accordance with Local Rule 7.6 on or before **June 25, 2015**." We also warned Taylor in clear and precise terms of the consequences which could flow from a failure to respond telling him that:

> Local Rule 7.6 of the Rules of this Court imposes an affirmative duty on the plaintiff to respond to motions, and provides that: Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within seven (7) days after service of the motion. *Any party who fails to comply with this rule shall be deemed not to oppose such motion*. Nothing in this rule shall be construed to limit the authority of the court to grant any motion before expiration of the prescribed period for filing a brief in opposition. A brief in opposition to a motion for summary judgment and LR 56.1 responsive statement, together with any transcripts, affidavits or other relevant documentation, shall be filed within twenty-one (21) days after service of the movant's brief. Local Rule 7.6 (emphasis added). It is now well-settled that "Local Rule 7.6 can be applied to grant a motion to dismiss without

analysis of the complaint's sufficiency 'if a party fails to comply with the [R]ule after a specific direction to comply from the court.' <u>Stackhouse v. Mazurkiewicz</u>, 951 F.2d 29, 30 (1991)." <u>Williams v. Lebanon Farms Disposal, Inc.</u>, No. 09-1704, 2010 WL 3703808, *1 (M.D. Pa. Aug.26, 2010). Therefore, a failure to comply with this direction may result in the motion being deemed unopposed and granted.

(Doc. 15.)

This deadline then passed without any action by the plaintiff to litigate this matter, respond to this motion, or comply with the Court's order directing a response. In the face of this continuing refusal to litigate this matter, respond to this motion, or obey this Court order, we concluded that Taylor had abandoned this lawsuit and recommended that Taylor's case be dismissed. That recommendation in <u>Taylor v. Harrisburg Police Department</u>, et al., 1:15-CV-543 remains pending before the district judge assigned to that case, Judge Jones.

Rather than litigate this claim where it was first filed, Taylor has now apparently opted to engage in something equivalent to a legal mulligan,[1] by filing two nearly identical complaints, one in his name and a second in the name of June Taylor, a person who is otherwise unidentified. Both of these complaints allege the same nucleus of operative facts which Taylor presented in his initial, but apparently

---

[1]A mulligan is a free shot sometimes given a golfer in informal play when the prior shot was poorly played. Merriam-Webster.com/dictionary/mulligan, Unlike golf, the law does not recognize mulligans.

abandoned, lawsuit that is pending before Judge Jones.  Both cases name a legally inappropriate defendant, the Harrisburg Police Department.  Moreover these two latest lawsuits involve identical and largely unarticulated legal claims of an unlawful search of Taylor in violation of the Fourth Amendment.  Furthermore, both lawsuits run afoul of the same legal obstacles which we previously outlined to Taylor in his initial lawsuit in  Taylor v. Harrisburg Police Department, et al., 1:15-CV-543, and none of these legal flaws have been addressed in any meaningful way by the plaintiffs in this latest set of complaints.

Along with these two complaints, Aaron and June Taylor have filed motions seeking leave to proceed *in forma pauperis*.  For the reasons set forth below, we will grant leave to proceed *in forma pauperis* in these two cases, but as part of our legally-mandated screening review we find that the plaintiffs have failed to state a claim upon which relief may be granted.  Therefore, we recommend that the Court dismiss these cases.

## II.   Discussion

### A.   Screening of *Pro Se* Complaints–Standard of Review

This Court has an on-going statutory obligation to conduct a preliminary review of *pro se* complaints brought by plaintiffs given leave to proceed *in forma pauperis* in cases which seek redress against government officials.  See 28 U.S.C. §

1915(e)(2)(B)(ii).  Specifically, when reviewing *in forma pauperis* complaints, 28

U.S.C. § 1915(e)(2)(B)(ii) specifically enjoins us to "dismiss the complaint at any

time if the court determines that . . . the action . . . fails to state a claim upon which

relief may be granted."  This statutory text mirrors the language of Rule 12(b)(6) of

the Federal Rules of Civil Procedure, which provides that a complaint should be

dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ.

P. 12(b)(6).

    With respect to this benchmark standard for legal sufficiency of a complaint,

the United States Court of Appeals for the Third Circuit has aptly noted the evolving

standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in
> recent years.  Beginning with the Supreme Court's opinion in <u>Bell
> Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) continuing with our
> opinion in <u>Phillips</u> [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir.
> 2008)] and culminating recently with the Supreme Court's decision in
> <u>Ashcroft v. Iqbal</u>  –U.S.–, 129 S.Ct. 1937 (2009) pleading standards
> have seemingly shifted from simple notice pleading to a more
> heightened form of pleading, requiring a plaintiff to plead more than the
> possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

    In considering whether a complaint fails to state a claim upon which relief may

be granted, the court must accept as true all allegations in the complaint and all

reasonable inferences that can be drawn therefrom are to be construed in the light

most favorable to the plaintiff.  Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994).  However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss."  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged."  Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).  As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do."  Id. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level."  Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss.  In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678.  Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.  As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis.  First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to  show that the plaintiff has a "plausible claim for relief."  In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the court of appeals has observed:  "The Supreme Court in Twombly set forth the 'plausibility' standard for overcoming a motion to dismiss and refined this approach in Iqbal.  The plausibility standard requires the complaint to allege 'enough

8

facts to state a claim to relief that is plausible on its face.' Twombly, 550 U.S. at 570, 127 S.Ct. 1955.  A complaint satisfies the plausibility standard when the factual pleadings 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955).  This standard requires showing 'more than a sheer possibility that a defendant has acted unlawfully.' Id.  A complaint which pleads facts 'merely consistent with' a defendant's liability, [ ] 'stops short of the line between possibility and plausibility of "entitlement of relief." ' " Burch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011) cert. denied, 132 S. Ct. 1861, 182 L. Ed. 2d 644 (U.S. 2012).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:  "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947.  Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950.  Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

In this regard, one of the basic requisites for a civil complaint is that it must recites some essential facts tying the defendants to some alleged misconduct.  This fundamental requirement is driven both by matters of principle, and by pragmatic considerations.  As a matter of principle and practice, a basic factual recital is essential in a complaint because it is simply impossible without such averments to properly assign individual responsibility to a particular defendant without some factual description of what has transpired.  Therefore, it is incumbent upon a plaintiff to describe who he seeks to sue, and what these parties did that violated the plaintiff's

rights.  When a plaintiff fails in this basic responsibility, it is the duty of the court to dismiss his claims.  See, e.g., Moss v. United States, 329 F. App'x 335 (3d Cir. 2009)(dismissing illegible complaint); Radin v. Jersey City Medical Center, 375 F. App'x 205 (3d Cir. 2010); Earnest v. Ling, 140 F. App'x 431 (3d Cir. 2005)(dismissing complaint where "complaint fails to clearly identify which parties [the plaintiff] seeks to sue"); Oneal v. U.S. Fed. Prob., CIV.A. 05-5509 (MLC), 2006 WL 758301 (D.N.J. Mar. 22, 2006)(dismissing complaint consisting of approximately 50 pages of mostly-illegible handwriting); Gearhart v. City of Philadelphia Police, CIV.A.06-0130, 2006 WL 446071 (E.D. Pa. Feb. 21, 2006) dismissing illegible complaint).  Further, in order to satisfy the strictures of Rule 8, a complaint must also contain a coherent prayer for relief, demanding relief from a defendant that lies within the power of the defendant to provide.  See Klein v. Pike Cnty. Comm'rs, CIV.A. 11-278, 2011 WL 6097734 (M.D. Pa. Dec. 6, 2011)(failure to articulate a prayer for relief compels dismissal); Snyder v. Snyder, 4:12-CV-105, 2012 WL 512003 (M.D. Pa. Jan. 24, 2012) report and recommendation adopted, 4:12-CV-105, 2012 WL 511993 (M.D. Pa. Feb. 15, 2012)(same).

Applying these legal benchmarks, for the reasons set forth below, we conclude that these two complaints are fatally flawed and should, therefore, be dismissed.

**B.     These New Filings Violate the First Filed Rule and Should Be Dismissed in Favor of Taylor's First Filed Case**

At the outset, the plaintiffs' efforts to simply repeatedly re-file the same allegations before different judges of this Court in the guise of separate lawsuits violates a basic policy of judicial administration, the "first-filed" rule.

> Nearly fifty years ago, this court adopted what has become known as the "first-filed" rule. We concluded that "[i]n all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it." Crosley Corp. v. Hazeltine Corp., 122 F.2d 925, 929 (3d Cir.1941) (quoting Smith v. McIver, 22 U.S. (9 Wheat.) 532, 6 L.Ed. 152 (1824)), cert. denied, 315 U.S. 813, 62 S.Ct. 798, 86 L.Ed. 1211 (1942). Since then, this policy of comity has served to counsel trial judges to exercise their discretion by enjoining the subsequent prosecution of "similar cases ... in different federal district courts." See generally Compagnie Des Bauxites De Guinea v. Insurance Co. of North America, 651 F.2d 877, 887 n. 10 (3d Cir.1981), cert. denied, 457 U.S. 1105, 102 S.Ct. 2902, 73 L.Ed. 1312 (1982); see also Berkshire Intern. Corp. v. Marquez, 69 F.R.D. 583, 586 (E.D.Pa.1976) ("it has long been the policy of our Circuit Court that absent unusual circumstances" the first-filed rule applies in cases of concurrent federal jurisdiction); accord West Gulf Maritime Ass'n v. ILA Deep Sea Local 24, 751 F.2d 721, 728 (5th Cir.1985) ("federal courts have long recognized that ... comity requires federal district courts ... to exercise care to avoid interference with each other's affairs.").

E.E.O.C. v. Univ. of Pennsylvania, 850 F.2d 969, 971 (3d Cir. 1988) aff'd, 493 U.S. 182, 110 S. Ct. 577, 107 L. Ed. 2d 571 (1990)

"The first-filed rule requires, absent extraordinary circumstances, that cases sharing substantially similar subject matter and subject to concurrent federal jurisdiction be decided by the court where the litigation was first filed. E.E.O.C. v.

Univ. of Pennsylvania, 850 F.2d 969, 971 (3d Cir.1988), aff'd on other grounds, 493 U.S. 182, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990); Villari Brandes & Kline, P.C. v. Plainfield Specialty, No. 09–2552, 2009 WL 1845236, at *6 (E.D.Pa. June 26, 2009) (Bartle, J.); Koresko v. Nationwide Life Ins. Co., 403 F.Supp.2d 394, 399 (E.D.Pa.2005) (Robreno, J.). The rationale for the rule is the desire for sound judicial administration and comity among federal courts of equal stature. EEOC, 850 F.2d at 971." Synthes, Inc. v. Knapp, 978 F. Supp. 2d 450, 455 (E.D. Pa. 2013). Given the rationale behind this rule, "the rule's application is not cabined to proceedings involving identical parties and identical issues, but extends to cases where there is a substantial overlap of the subject matter. Villari, 2009 WL 1845236, at *6. Thus, the critical substantive inquiry of the first-filed rule analysis is subject matter." Synthes, Inc. v. Knapp, 978 F. Supp. 2d 450, 457 (E.D. Pa. 2013).

Examining these two latest *pro se* complaints, and comparing them against Taylor's first-filed lawsuit, with our substantive inquiry focused on whether the subject matter of these three cases is identical, we have little difficulty concluding that all three cases involve the same subject matter. The cases arise out of the same nucleus of operative fact, and entail identical legal claims advanced in virtually identical terms. Accordingly, under the first-filed rule, these subsequent cases should be dismissed and the plaintiffs should be instructed to litigate their claims in their

first-filed lawsuit, rather than abandoning that lawsuit and then engaging in some serial form of judge shopping involving the litigation of the same claims before new judges.

**C.    The Claims Against The Police Department Should Be Dismissed**

Beyond this threshold legal flaw, we also note that the Harrisburg Police Department is not a proper institutional defendant in either of these two actions since police departments serve only as an administrative arm of a municipality, and it is a municipality through which any liability must flow to the police department.  Indeed, it has been repeatedly held that a police department is not a "person" for purposes of § 1983 and, therefore, is not a proper defendant in a § 1983 action.  Blackwell v. Middletown Borough Police Dep't, 1:12-CV-825, 2012 WL 6012568 (M.D. Pa. Nov. 16, 2012), report and recommendation adopted, 1:12-CV-825, 2012 WL 6002689 (M.D. Pa. Nov. 30, 2012), citing Golya v. Golya, 2007 U.S. Dist. LEXIS 58093, *29–30 (M.D.Pa.2007) (explaining that courts within the Third Circuit have concluded that a police department is merely a sub-unit of the local government and is not amenable to suit under § 1983); Wivell v. Liberty Township Police Dept., 2007 U.S. Dist. LEXIS 54306, *5–6 (M.D.Pa.2007) (explaining that police department not subject to suit in a § 1983 action); Mitros v. Cooke, 170 F.Supp.2d 504, 507

14

(E.D.Pa.2001) (city police department is a sub-unit of the city government that is merely a vehicle through which the city fulfills its policing functions, and is not a separate entity for purposes of suit; Tobin v. Badamo, 3:00CV783, 2000 WL 1880262 (M.D.Pa. Dec.20, 2000) (municipal police department is not a proper party to a section 1983 action because it is merely a subunit of the city and not a separate corporate entity); McMahon v. Westtown–East Goshen Police Dept., No. Civ.A. 98–3919, 1999 WL 236565, 1999 U.S. Dist. LEXIS 5551, at *4 (E.D.Pa. Apr.22, 1999) (citing Johnson v. City of Erie, 834 F.Supp. 873, 878–79 (W.D.Pa.1993) and Agresta v. City of Philadelphia, 694 F.Supp. 117, 119 (E.D.Pa.1988)); Johnson v. City of Erie, Pa., 834 F.Supp. 873, 879 (W. D.Pa.1993).  In light of this consistent case law rejecting efforts to name local departments as institutional defendants in §1983 actions, it is recommended that the claims against this institutional defendant also be dismissed.

Further, to the extent that Taylor seeks to hold the City of Harrisburg liable for alleged civil rights violations, he must meet an exacting burden of pleading and proof. It is well-settled that local governmental entities may not be held liable under § 1983 for the acts of others under a theory of respondeat superior or vicarious liability. Ashcroft v. Iqbal, 556 U.S. 662 (2009); see also Colburn v. Upper Darby Twp., 946 F.2d 1017, 1027 (3d Cir. 1991).  Instead, such an agency may only be held liable

"when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

Thus, to sustain a claim against this institutional defendant, a plaintiff must "identify a . . . 'policy' or 'custom' that caused the plaintiff's injury." Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403 (1997). This custom must be "so widespread as to have the force of law." Id. at 404; see also Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (a policy is an official proclamation or edict of a municipality, while a custom is a practice that is "so permanent and well settled as to virtually constitute law") (quoting Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990) (citations omitted). The plaintiff must further "allege that a 'policy or custom' of [the defendants] was the 'moving force' behind the [constitutional] violation." Grayson v. Mayview State Hosp., 293 F.3d 103, 107 (3d Cir. 2002) (citing Brown, 520 U.S. at 404). A municipality can be held liable on the basis of failure to train when "that failure amounts to 'deliberate indifference . . . [of the constitutional] rights of persons. . . .'" Woloszyn v. County of Lawrence, 396 F.3d 314, 324 (3d Cir. 2005) (citations omitted). There must also be a causal nexus, in that the "'identified deficiency in [the] training program must be closely related to

16

the ultimate [constitutional] injury.'"   Id. at 325 (citations omitted).   Therefore,

analysis of a claim under Monell requires separate analysis of two distinct issues:

"(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so

whether the [municipality] is responsible for that violation." Collins v. City of Harker

Heights, Texas, 503 U.S. 115, 120 (1992).

An institutional defendant may also be liable for constitutional violations

resulting from inadequate training or supervision of its employees if the failure to

train amounts to a custom of the municipality.   However, failure-to-train claims also

must meet precise and demanding legal criteria.   Such a failure must "amount[] to

deliberate indifference to the constitutional rights of persons with whom the police

come in contact." Colburn, 946 F.2d at 1028 (citing City of Canton v. Harris, 489

U.S. 378, 388 (1989)).   Proving agency liability on a theory of deliberate indifference

is an especially difficult showing for a plaintiff to satisfy where the plaintiff has

alleged that insufficient training or supervision has caused constitutional violations.

Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997).   Such a showing requires

that "(1) . . . lawmakers know that employees will confront a similar situation; (2) the

situation involves a difficult choice or a history of employees mishandling; and (3)

the wrong choice by an employee will frequently cause deprivation of constitutional

rights." Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir. 1999).   Moreover, the

plaintiff proceeding on such a theory must establish that the agency's "deliberate conduct . . . was the 'moving force' behind the injury alleged." <u>Reitz</u>, 125 F.3d at 145 (quoting <u>Brown</u>, 520 U.S. at 404). Therefore, the need for training, supervision, or other corrective action to avoid imminent deprivations of a constitutional right "must be so apparent that any reasonable policymaker or supervisor would have taken appropriate preventive measures." <u>Horton v. City of Harrisburg</u>, No. 06-2338, 2009 U.S. Dist. LEXIS 63428, *13 (M.D. Pa. July 23, 2009) (quoting <u>Strauss v. Walsh</u>, No. Civ. A. 01-3625, 2002 U.S. Dist. LEXIS 24717, 2002 WL 32341791, at *3 (E.D. Pa. Dec. 17, 2002)). Additionally, in order to recover for municipal liability on a failure-to-train theory, the alleged failure must be "closely related to the ultimate (constitutional) injury." <u>Woloszyn</u>, 396 F.3d at 325.

The Supreme Court has reaffirmed the exacting guiding principles which define institutional civil rights liability based upon a failure to train or oversee law enforcement officers. In <u>Connick v. Thompson</u>, – U.S.– , 131 S.Ct. 1350, 1359 (2011), the court described the parameters of agency liability in the following terms:

> A municipality or other local government may be liable . . . if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation. <u>See</u> <u>Monell v. New York City Dept. of Social Servs.</u>, 436 U.S. 658, 692 (1978). But, under § 1983, local governments are responsible only for "their own illegal acts." <u>Pembaur v. Cincinnati</u>, 475 U.S. 469, 479(1986) . . . . They are not vicariously liable under § 1983 for their employees'

actions. . . . Plaintiffs who seek to impose liability on local governments under § 1983 must prove that "action pursuant to official municipal policy" caused their injury.  Monell, 436 U.S., at 691.   Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. . . . . These are "action[s] for which the municipality is actually responsible." Pembaur, supra, at 479–480.   In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983.   A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.  See Oklahoma City v. Tuttle, 471 U.S. 808, 822–823 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in Monell ").  To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." . . . . Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983. . . .  " '[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." . . . . Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program.

Id. (some citations deleted).

Here, these two complaints simply do not make sufficient allegations which would permit a finding of institutional liability against the City of Harrisburg.  With respect to these institutional liability claims, in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)  <u>Id.</u> at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u>  Fairly construed, these pleadings do not even rise to the level of a formulaic recitation of the elements of a cause of action, a form of pleading that will not do.  In particular, the decision to name this institutional defendant in the caption of these cases, but not describe its conduct in the body of these pleadings, is legally insufficient to state a claim.  <u>See</u> <u>Walthour v. Child & Youth Servs.</u>, 728 F. Supp. 2d 628, 636 (E.D. Pa. 2010)(dismissing claims against defendants only identified in exhibits attached to complaint).  This cursory style of pleading is plainly inadequate to state a claim against the individual defendants and compels dismissal of this institutional defendant.  <u>Hudson v. City of McKeesport</u>, 244 F. App'x 519 (3d Cir. 2007)(affirming dismissal of defendant who was only named in caption of case.)  Therefore, the claims against this institutional defendant fail as a matter of law to state a claim of municipal civil rights liability.

### D.   The Complaints Fail to Allege Well-Pleaded Facts Relating to the Individual Defendants

These two complaints are similarly flawed in their factual recitals relating to the individual police officers named in these pleadings.  As to these police officers

the complaints simply allege without any further supporting factual averments that the defendant "did knowingly search the plaintiffs' person and possessions, without valid cause." The plaintiffs then refer us to various court dockets and reports, apparently expecting the Court to ferret out the factual basis for these claims.

This will not do. As the Supreme Court has observed, in this setting, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Rather, " a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Fowler, 578 F.3d at 210-11. These complaints do not meet this minimal threshold of pleading, the recital of some well-pleaded facts to support a legal claim. In particular, the plaintiffs's curious pleading style of naming certain police officer defendants and then simply attaching various reports and criminal docket references to the complaint in the apparent hope that we will be able to ferret out the elements of a cause of action against these defendants, is legally insufficient to state a claim. See Walthour v. Child & Youth Servs., 728 F. Supp. 2d 628, 636 (E.D. Pa. 2010)(dismissing claims against defendants only identified in exhibits attached to complaint). This cursory style of pleading is plainly inadequate to state a claim against the individual defendants and compels dismissal of these defendants.

**D.    Given the Pending State Criminal Case Against Taylor, This Court Should Abstain From Litigating These Claims**

While these complaints are largely devoid of factual averments, in Taylor's original case the defendant referred us to undisputed court dockets which, on their face, reflected that Taylor was arrested on an outstanding warrant in February 2015, and that a search incident to Taylor's arrest on this warrant resulted in the seizure of marijuana from Taylor.  The drug charge brought against Taylor as a result of this search incident to his arrest on other charges remains pending in the Court of Common Pleas for Dauphin County.

This information presents several additional obstacles to the claims set forth in these two complaints.  First, the authority of police officers to conduct warrantless searches of a person incident to a lawful arrest has been a settled feature of federal constitutional law for the past 40 years.  United States v. Robinson, 414 U.S. 218 (1973).  Here, the presently undisputed facts seem to reveal that Taylor was arrested pursuant to a warrant, searched incident to that arrest, and was found to be in possession of marijuana.  This course of action by police violates no constitutional right of Taylor's and gives rise to no liability on behalf of the officers.  This principle would apply and defeat these claims even if, as Taylor suggests, the arrest warrant had been withdrawn, provided that the police officers had a good faith belief that

there was an outstanding warrant for Taylor.  See  Herring v. United States, 555 U.S. 135, 135, 129 S. Ct. 695, 696, 172 L. Ed. 2d 496 (2009).

Further, to the extent that these two complaints invite this Court to intervene in these pending state cases, these *pro se* pleadings run afoul of a settled tenet of federal law, the Younger abstention doctrine.  The Younger abstention doctrine is inspired by basic considerations of comity that are fundamental to our federal system of government.  As defined by the courts:  "Younger abstention is a legal doctrine granting federal courts discretion to abstain from exercising jurisdiction over a claim when resolution of that claim would interfere with an ongoing state proceeding.  See Younger v. Harris, 401 U.S. 37, 41 (1971) ('[W]e have concluded that the judgment of the District Court, enjoining appellant Younger from prosecuting under these California statutes, must be reversed as a violation of the national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances.')."  Kendall v. Russell, 572 F.3d 126, 130 (3d Cir. 2009).

This doctrine, which is informed by principles of comity, is also guided by these same principles in its application.  As the United States Court of Appeals for the Third Circuit has observed:

"A federal district court has discretion to abstain from exercising jurisdiction over a particular claim where resolution of that claim in federal court would offend principles of comity by interfering with an

ongoing state proceeding." Addiction Specialists, Inc. v. Twp. of Hampton, 411 F.3d 399, 408 (3d Cir.2005) (citing Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)). As noted earlier, the Younger doctrine allows a district court to abstain, but that discretion can properly be exercised only when (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims. Matusow v. Trans-County Title Agency, LLC, 545 F.3d 241, 248 (3d Cir.2008).

Kendall v. Russell, 572 F.3d at 131.

Once these three legal requirements for Younger abstention are met, the decision to abstain rests in the sound discretion of the district court and will not be disturbed absent an abuse of that discretion. Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319, 325 (3d Cir. 2004). Moreover, applying these standards, federal courts frequently abstain from hearing matters which necessarily interfere with on-going state criminal cases. Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319 (3d Cir. 2004); Zahl v. Harper, 282 F.3d 204 (3d Cir. 2002).

In this case, the plaintiffs' *pro se* complaints reveal that all of the legal prerequisites for Younger abstention are present here with respect to claims that seek to interfere with on-going state cases. First, it is evident that there are state proceedings in this case. Second, it is also apparent that those proceedings afford the plaintiff a full and fair opportunity to litigate the issues raised in this lawsuit in this

24

state case.  See Sullivan v. Linebaugh, 362 F. App'x 248, 249-50 (3d Cir. 2010).

Finally, it is clear that the state proceedings implicate important state interests, since

these matters involve state criminal law enforcement, an issue of paramount

importance to the state.  See, e.g., Lui v. Commission on Adult Entertainment

Establishments, 369 F.3d 319 (3d Cir. 2004); Zahl v. Harper, 282 F.3d 204 (3d Cir.

2002).

Since the legal requirements for Younger abstention are fully met here, the

decision to abstain rests in the sound discretion of this court.  Lui v. Commission on

Adult Entertainment Establishments, 369 F.3d 319, 325 (3d Cir. 2004).  However,

given the important state interest in enforcement of its criminal laws, and recognizing

that the state courts are prepared to fully address the merits of these matters, we

believe that the proper exercise of this discretion weighs in favor of abstention and

either dismissal or a stay of these federal cases at the present time.  Lui v.

Commission on Adult Entertainment Establishments, 369 F.3d 319 (3d Cir. 2004);

Zahl v. Harper, 282 F.3d 204 (3d Cir. 2002).

### III.   Recommendation

Accordingly, for the foregoing reasons, the plaintiffs' motions for leave to

proceed in forma pauperis are GRANTED, but IT IS RECOMMENDED that the

plaintiffs' complaints be dismissed with instructions that these claims should be litigated where they were first filed.

The plaintiffs are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 23d day of July 2015.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge